UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

CASE NO. 15-CR-20710
HONORABLE GEORGE CARAM STEEH

D-3 DAJUAN DOWDELL,

        Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS (Doc. 26)
AND DENYING DEFENDANT'S MOTION TO QUASH INDICTMENT (Doc. 27)**

A grand jury indicted defendant Dajuan Dowdell and two others in a two count indictment charging him with (1) aiding and abetting a carjacking in violation of 18 U.S.C. § 2 and 18 U.S.C. § 2119(1), by taking a 2005 Pontiac Grand Am by force and violence from a victim on October 24, 2015, and (2) aiding and abetting using and carrying a firearm during and in relation to that carjacking in violation of 18 U.S.C. § 2, 18 U.S.C. § 924(c)(1)(A)(ii) and (3).[1] Now before the court are two motions filed by the defendant: (1) defendant's motion to suppress his statement, and (2) defendant's motion to quash Count Two of the indictment. A hearing was held on March 16, 2016. At oral argument, defendant relied on his submissions on the motion to suppress and argued the motion to quash Count Two of the indictment. For the reasons set forth below, defendant's motions shall be denied.

---

[1] A first superseding indictment was filed on February 18, 2016 which added a new defendant and charged him with misprison of a felony and accessory after the fact. (Doc. 32). It did not alter the charges against defendant.

-1-

## I. Defendant's Motion to Suppress

### A. Factual Background

Defendant was arrested for carjacking on October 25, 2015, and was housed overnight with other prisoners in a large cell at the Detroit Detention Center. According to the defendant, he was held for more than 24 hours at the detention center and was forced to sleep overnight in a very cold room with no blanket. The government responds that the cell was heated to 72 degrees and defendant had access to a blanket if he so desired. The government claims that defendant was fed breakfast, lunch, and dinner. Defendant was interviewed by Detective Clive Stewart of the Detroit Police and by FBI Task Force Officer George Reinerth. The interview was videotaped and the court has carefully reviewed the tape in its entirety. Defendant was alone in the interview room for about an hour before the interview began. (3:23:00-4:26:49). The questioning lasted approximately two hours and twenty minutes. (4:26:49-6:49:20).

After defendant was identified in a live corporal lineup, he was put in an interview room, not in handcuffs, and was videotaped receiving his Constitutional Rights from Detective Stewart. Defendant received a Miranda Rights form, read his rights out loud, stated he understood them, waived his rights, and agreed to speak to Detective Stewart. (4:42:50-44:37). Defendant spoke with Detective Stewart and Agent Reinerth who joined them for a portion of the interview. Defendant told them about numerous crimes, including several murders, that he knew about, but for the first approximately two hours of questioning he denied any involvement in the carjacking. Late in the interview, defendant offered to admit his involvement if it meant he would serve less time, and Detective Stewart told him not to say anything if it wasn't the truth. (6:19:45-

23:17).  Sometime after those comments were made, Detective Stewart recuffed defendant in preparation to return him to his cell and left defendant alone in the interview room.  (6:25:09).

When Detective Stewart returned to the room, he engaged defendant in a brief conversation in the doorway which was out of the view of the video camera but was captured by audiotape.  (6:29:04-29).  At that time, defendant admitted that he was at the carjacking.  (6:29:32).  After this admission, Detective Stewart and defendant returned to the interview room (6:30:07) and their conversation was recorded on videotape.  Defendant remained in handcuffs, admitted he was at the carjacking, that he took the I-phones, (6:30:32) (6:38:26) admitted that defendant Cliff Connor had a gun and ordered the driver out of the car, (6:30:22) and stated that defendant Robbie Barrett grabbed the passenger (6:30:25).  He denied touching anyone.  (6:31:05).  Later he claimed Connor passed him the phones.  (6:31:53).  Also, later in the interview, he admitted again that he was at the carjacking (6:37:40).  He stated that two I-phones and the car were stolen.  (6:43:32-48).  He admitted that he knew the gun was a .380.  (6:43:05).  He apologized for being at the carjacking (6:45:21-28; 6:46:14-16).  Defendant attested to the truth of his confession and stated that it was freely given.  (6:46:56).  Defendant signed a written confession.  (6:47:32).

**B. Standard of Law**

Defendant argues that his confession was involuntary.  In deciding whether defendant's waiver was voluntary, the government must prove waiver by a preponderance of the evidence.  *Colorado v. Connelly*, 479 U.S. 157, 168 (1986).  Without police coercion, a confession should not be deemed involuntary.  *Id.* at 167.

The government argues that defendant voluntarily waived his Fifth Amendment rights, and that his waiver was voluntary because there was no police coercion.  The Sixth Circuit has set forth a three-part test for determining whether a confession is involuntary: (1) the police activity was objectively coercive; (2) the coercion must be sufficient to overbear the defendant's will; and (3) the alleged police misconduct must be the crucial motivating factor in the defendant's decision to offer the statement. *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999).  In determining whether the statement was voluntary, the court considers the totality of the circumstances.  *Id.* Those factors include "the defendant's age, education and intelligence; whether the defendant has been informed of his constitutional rights; the length and extent of the questioning; and the use of physical punishment, such as the deprivation of food or sleep."  *Id.* at 423.

**C. Analysis**

Defendant's Miranda rights were not violated.  The government has proven waiver by a preponderance of the evidence.  Defendant's complaints that he was housed overnight in a cold cell, and was questioned while in handcuffs, do not rise to the level of police coercion especially where defendant does not dispute that he received three meals while detained, and the videotape shows that defendant read, understood, and signed a waiver his Miranda rights.  Defendant never asked to cease questioning or to call an attorney.  Detective Stewart and Agent Reinerth encouraged defendant to tell the truth and advised him that telling the truth would be helpful to him when they presented their evidence to the prosecutors, but they did not make any specific guarantees or promises, and advised him that any decisions regarding leniency

would be up to the prosecutor. Defendant has not argued that the officers made any promises of leniency or that his confession was constitutionally infirm on this basis.

In his two-page brief in support of his motion to suppress, defendant states that he "will file a brief post-hearing at which time he will apply the facts elicited at the hearing to the law governing involuntary statements in this Circuit." (Doc. 26 at 2). At oral argument, however, defendant presented no witnesses, relied solely on his original submissions, and did not seek leave to file any additional briefing. Thus, in reaching its decision here, the court relies only on the initial briefing and the court's review of the videotaped interview. Having done so, the court finds that defendant voluntarily waived his Miranda rights and freely admitted his involvement in the carjacking. Accordingly, defendant's motion to suppress his statement is DENIED.

## II. Defendant's Motion to Quash Count Two of the Indictment

The court turns now to defendant's motion to quash Count Two of the Indictment on the grounds that the government failed to demonstrate to the grand jury that defendant knew one of his confederates would carry a gun to the carjacking.

**A. Background**

Count Two of the first superseding indictment charges defendant with aiding and abetting using and carrying a firearm during and in relation to that carjacking in violation of 18 U.S.C. § 2, 18 U.S.C. § 924(c)(1)(A)(ii) and (3). In addition to identifying the specific criminal statutes alleged to have been violated, Count Two charges that defendant and two others, "as aiders and abettors of one another, did knowingly and intentionally use and carry a firearm during and in relation to a crime of violence, to wit: Carjacking as alleged in Count One of this indictment." (Doc. 32).

**B. Analysis**

Defendant claims that the indictment fails to allege conduct that satisfies the mens rea requirement for aiding and abetting a section 924(c) charge as explained in the Supreme Court's recent opinion in *Rosemond v. United States*, 134 S. Ct. 1240, 1248-49 (2014). In *Rosemond*, the Court held that in order to convict a defendant of aiding and abetting a § 924(c) offense, the government must prove that the defendant had advance knowledge that one of his confederates will carry a gun, or once the crime has begun, knowledge sufficient in time that the defendant can realistically remove himself from the crime. *Id.* at 1249–50.

In order for the indictment to pass constitutional muster, it must satisfy two requirements: (1) it must give the defendant notice of the charges against him and set out all the elements of the charged offense, and (2) it must be sufficiently specific such that the defendant may plead double jeopardy in a subsequent proceeding. *United States v. Martinez*, 981 F.2d 867, 872 (6th Cir. 1992) (citing *Russell v. United States*, 369 U.S. 749, 763-64 (1962)); *see also Hamling v. United States*, 418 U.S. 87, 117-18 (1974). In considering whether the requirements have been met, the court must use " 'a common sense construction' " to determine whether the indictment gives the defendant fair notice of the charges. *United States v. Maney,* 226 F.3d 660, 663 (6th Cir. 2000) (quoting *Allen v. United States*, 867 F.2d 969, 971 (6th Cir.1989)). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *Hamling*, 418 U.S. at 117 (internal quotation marks and citations

omitted); *see United States v. Anderson*, 605 F.3d 404, 411 (6th Cir. 2010); *United States v. Hudson*, 491 F.3d 590, 593 (6th Cir. 2007) (affirming district court's refusal to dismiss an indictment that tracked the statutory language); *Martinez*, 981 F.2d at 872 (holding that an indictment that omitted the *mens rea* element was sufficient because it cited the applicable statutes, which informed the defendant of the elements of the charged offenses). In considering defendant's motion, the "indictment is to be construed liberally in favor of its sufficiency." *United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007).

When a term used in a statute is a "legal term of art," rather than "merely a generic or descriptive term," the indictment need not allege the "legal definition" of the term. *Hamling,* 418 U.S. at 118 (holding that indictment charging that a brochure was obscene without defining obscenity was sufficient); *United States v. Resendiz-Ponce*, 549 U.S. 102, 107 (2007) (holding that the term "attempt," like the term "obscene" in *Hamling*, is a legal term encompassing both the intent and the overt act which need not be further defined in the indictment). Hence, the meaning of the "intent" requirement needed to be found guilty of aiding and abetting a section 924(c) offense is a legal term of art, which is not required to be further delineated in the indictment.

An indictment must provide a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). The statutory language "must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." *Hamling*, 418 U.S. at 117 (internal quotation marks and citations omitted); *see United States v. Coss*, 677 F.3d 278, 288

(6th Cir. 2012). In this case, the indictment identifies the date of the carjacking, the type of car stolen, the place, the victim, the fact that a firearm was brandished, and that the defendants, as aiders and abettors of one another, knowingly and intentionally used and carried a firearm during the carjacking. Thus, it sufficiently advises and gives notice to defendant of the nature and extent of the charges faced.

An indictment is valid if returned by "a legally constituted and unbiased grand jury." *Costello v. United States*, 350 U.S. 359, 363 (1956). An indictment is not subject to challenge on the basis that there was inadequate or incompetent evidence before the grand jury. *Id.* The Supreme Court recently reiterated the rule that a defendant may not challenge the sufficiency of the evidence supporting a grand jury's indictment:

> [A]n indictment fair upon its face, and returned by a properly constituted grand jury, we have explained, conclusively determines the existence of probable cause to believe the defendant perpetrated the offense alleged. And "conclusively" has meant, case in and case out, just that. We have found no authority for looking into and revising the judgment of the grand jury upon the evidence, for the purpose of determining whether or not the finding was founded upon sufficient proof. To the contrary, the whole history of the grand jury institution demonstrates that a challenge to the reliability or competence of the evidence supporting a grand jury's finding of probable cause will not be heard. The grand jury gets to say—without any review, oversight, or second-guessing—whether probable cause exists to think that a person committed a crime.

*Kaley v. United States*, 134 S. Ct. 1090, 1097 (2014) (internal quotation marks and citations omitted). Defendant has not challenged that the indictment appropriately sets forth the correct elements of the statutes and offenses charged therein, and has not raised any objection that the grand jury was properly constituted or unbiased. Defendant's only argument is that the indictment should be dismissed because the government failed to establish to the grand jury that defendant knew one of his

confederates would carry a gun to the carjacking. Given that the indictment was fair upon its face, *Kaley* requires the conclusion that defendant cannot challenge the adequacy of the evidence presented to the grand jury.

Defendant argues that the Sixth Circuit's divided opinion in *United States v. Superior Grower's Supply, Inc.*, 982 F.2d 173, 177 (6th Cir. 1992) (Nelson, J., dissenting), where the court affirmed dismissal of the indictment, requires dismissal of Count Two here. *Superior Grower's* is inapposite. In that case, the court determined that the indictment was deficient as it omitted an essential element of the offense, namely, that defendants, a garden supply store, its owners, and employee, charged with aiding and abetting a conspiracy to manufacture marijuana, had knowledge of the underlying crime, specifically, that their customers were indeed manufacturing marijuana or intended to do so. *Id.* at 178-80. No similar deficiency exists here.

In a similar context, the Ninth Circuit rejected the argument that an indictment was defective because it did not allege that the defendant's conduct had a "substantial" effect on commerce, explaining that the requirement that the effect on commerce be "substantial" was not in the text of the criminal statute at issue but was "a judicial gloss upon the statutory language." *United States v. Renteria*, 187 F. App'x 704, 706 (9th Cir. 2006) (citations omitted). The court explained that "an indictment that follows the statutory language, and otherwise puts the accused on fair notice of all the implied elements of the charge, is not also required to incorporate judicial decisions that have interpreted that language." *Id.* (citing *Godinez-Rabadan*, 289 F.3d 630, 634 (9th Cir. 2002)). Thus, the indictment here is sufficient, gives the defendant adequate notice of

the charges against him, and need not include the *Rosemond* Court's articulation of the *mens rea* requirement to withstand constitutional scrutiny.

Defendant relies primarily on cases involving whether the government's proofs at *trial* were sufficient to meet *Rosemond's* articulation of the mens rea required for a firearms conviction for aiding and abetting a section 924(c) violation. (Doc. 27 at 3). Those cases are inapposite here to the question of what is required for an *indictment* to give a defendant fair notice of the charges against him. The *Rosemond* Court's articulation of the knowledge required for a conviction for aiding and abetting a section 924(c) violation is judicial interpretation of the statutory elements of that crime and is not itself an essential element of the crime. In any event, defendant may have oversimplified the knowledge requirement as explained in *Rosemond.* The Sixth Circuit pattern jury instruction for aiding and abetting using or carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(I) and 2, which is current through September 1, 2015, defines the knowledge element as follows:

> (C) And third, that the defendant intended to help commit [or encourage] the crime of using or carrying a firearm during and in relation to a [crime of violence] . . . . The defendant intended to aid and abet the crime of using or carrying a firearm during and in relation to a [crime of violence] . . . . if he had advance knowledge that an accomplice would use or carry a firearm during the commission of a [crime of violence] . . . . Advance knowledge means knowledge at a time the defendant can attempt to alter the plan or withdraw from the enterprise. Knowledge of the firearm may, but does not have to, exist before the underlying crime is begun. [It is sufficient if the defendant gained the knowledge in the midst of the underlying crime, as long as the defendant chose to continue to participate in the crime and had a realistic opportunity to withdraw. You may, but need not, infer that the defendant had sufficient foreknowledge if you find that the defendant chose to continue his participation in the crime after the defendant knew an accomplice was using or carrying a firearm.]

Sixth Circuit Pattern Jury Instruction 12.04. The Committee Commentary to Sixth Circuit Pattern Jury Instruction 12.04 specifically identifies the *Rosemond* decision as well as the Sixth Circuit's recent opinion in *United States v. Henry*, 797 F.3d 371 (6th Cir. 2015), and states that 12.04 is a new instruction which incorporates those decisions.

It is clear from pattern instruction 12.04 that a defendant's knowledge of the firearm need not be established prior to the crime, as long as the defendant learned of the gun during the commission of the offense and continued to participate in the crime even though he had a realistic opportunity to withdraw. Even though it appears that defendant has oversimplified the advance knowledge requirement as explained in *Rosemond*, it is not necessary for the indictment to contain the kind of detail encompassed in a jury instruction or to provide judicial interpretation of the legal terms "knowingly and intentionally." It is enough that the indictment sets forth the essential elements of the offense and charges defendant, as an aider and abettor of his co-defendants, with "knowingly and intentionally" using and carrying a firearm during and in relation to a crime of violence, to wit, carjacking. Significantly, *Rosemond* addressed an error in the jury instructions and does not govern the degree of legal or factual detail required in an indictment.

Although the indictment provides the date of the carjacking, the vehicle involved, the victim, and the location, and the fact that a gun was used and brandished, at oral argument, plaintiff complained that the indictment is deficient because it does not

specifically identify which defendant actually carried and brandished the gun.[2]  There is no requirement that the indictment contain these details.  In sum, the indictment satisfies constitutional standards because it gives defendant notice of the charges against him and sets out all the elements of the charged offense, and is sufficiently specific that he may plead double jeopardy in a subsequent proceeding.  Because it is clear from the face of the indictment itself that the indictment is constitutionally sufficient, there was no need for the court to accept the government's invitation to review the grand jury transcript *in camera* in deciding defendant's motion.

### III. Conclusion

For the reasons set forth above, defendant's motion to suppress (Doc. 26) is DENIED and defendant's motion to dismiss Count Two of the indictment (Doc. 27) is DENIED.

**IT IS SO ORDERED**.

Dated:  March 24, 2016

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
March 24, 2016, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---

[2] At oral argument, the government represented that defendant punched the victim while his co-defendant brandished a gun.